ANTHONY LAVAJA *et al.*, Plaintiffs-Appellees, v. ROBERT CARTER, Defendant (Stephen House, Third-Party Defendant-Appellant; Michael Wojnowski, Third-Party Defendant-Appellee).

Second District   No. 85—1037

Opinion filed March 10, 1987.—Rehearing denied April 13, 1987.

NASH, J., dissenting.

Ronald P. Kane and John F. Stimson, both of Siegan, Barbakoff, Gomberg & Gordon, Ltd., of Chicago, for appellant.

Dan Walker, Jr., of Oak Brook, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

The defendant, Stephen House (defendant), appeals from the circuit court's order striking his pleadings, both answer and counterclaim, and entering a default judgment against him because of his failure to comply with discovery rules and court orders. The underlying action was plaintiffs' suit to recover payments on a promissory note owed by defendant and Robert Carter (a codefendant not a party to this appeal).

On May 14, 1984, Anthony and Eleanor Lavaja (plaintiffs) filed a complaint alleging that "On December 15, 1982, for value received, Robert Carter and Stephen C. House, made, executed and delivered a Promissory Note dated December 15, 1982, promising therein to pay Plaintiffs the principal sum of $65,000.00 plus interest, as set forth therein, with a final payment of the unpaid principal and accrued interest on January 15, 1984." They further alleged that after repeated demands, the defendants failed to make the final payment and are in default on the note. In a sworn affidavit, Anthony Lavaja stated that he negotiated the transaction in the office of Michael B. Wojnowski (Wojnowski), 880 North York Road, Elmhurst, Illinois. Wojnowski, in a sworn statement, stated that he witnessed the execution of the note on December 15, 1982, and that he had negotiated the note with the defendants and plaintiffs in his office.

On September 11, 1984, the plaintiffs were granted a substitution of attorneys. Dan Walker, Jr. (Walker), thereafter represented the plaintiffs. On May 31, 1985, Walker filed a notice to produce seeking, *inter alia*, statements, checks, checking accounts, corporate records, correspondence, promissory notes, and income tax records from defendant.

On June 14, 1985, defendant House was granted leave to file a third-party complaint against Wojnowski, alleging that Wojnowski fraudulently induced defendant to sign various promissory notes in blank in connection with a scheme that purportedly was directed toward purchasing a number of businesses, including the outstanding stock of Gallagher Textile Mills, Inc. Wojnowski was served with process and appeared before the court represented by Walker.

On October 29, 1985, defendant filed a motion to substitute his attorney which the court granted. His new attorney filed a memorandum in support of a motion to disqualify plaintiff's counsel based on his contention that Walker was in conflict of interest in representing both the plaintiffs and the third-party defendant in the same action. At the hearing of October 31, 1985, plaintiffs' counsel informed the trial court that defendant's counsel was refusing to con-

tinue discovery. The following colloquy ensued:

"THE COURT: What kind of discovery is outstanding?

MR. WALKER: There have been interrogatories, two checking accounts. I have been to Mr. Kane's office twice, and Mr. Marcham's office one time to look at the documents. As I said, I have been there. I said, 'This is not here. We will come back.'

MR. KANE: You have looked at all of the documents.

MR. WALKER: I have not. The answer to interrogatories indicates there are two other checking accounts which I have never seen, and I have pointed that out to you.

MR. KANE: We have produced all documents called for.

MR. WALKER: The last time I said I was going to come back to get all of the documents, he said, 'We are going to file this motion to disqualify you, and we aren't turning the documents over to you.' "

After an extended discussion by counsel as to what was and was not produced for the plaintiffs, the trial court ordered the defendant to produce all documents to the plaintiffs within the next seven days.

On November 7, 1985, the trial court heard arguments on the motion to disqualify Walker. Plaintiffs defended by arguing that "[s]ince the conflict of interest raised by defendant House does not involve the defendant ***, he has no standing to bring this motion." They also argued that they were fully apprised of the situation and that they agreed to allow Walker to continue as their counsel as well as Wojnowski's counsel. The trial court indicated it would disqualify Walker from representing both of the parties, but reserved entering the order to disqualify until the discovery had been completed. The basis of the disqualification was the trial court's feeling that "such an unusual lack of financial sophistication [existed between the parties] that I would have to struggle pretty hard to be sure that [plaintiffs] fully understood the very basic and serious conflict of the interest in this situation." The trial court granted plaintiffs 21 days to have substitute attorneys.

On November 27, 1985, plaintiffs, by their attorney Walker, petitioned the court to compel defendant to produce documents. Plaintiffs related that they had properly served notice to produce documents in May 1985; that their counsel had various discussions relative to the production of the documents listed therein; that the defendant agreed to produce all of the documents requested therein with the exception of certain documents pertaining to an investment

held by defendant in Milwaukee; that plaintiffs made repeated attempts to have defendant produce these documents and, at the end of August, the documents were to be produced (as a result of an order by a judge sitting on a companion case); that when plaintiffs' counsel went to review the documents, only part of them were made available; that plaintiffs' counsel made two separate trips to Chicago to review the documents, and on each occasion the defendant did not produce all of the documents; that on October 31, 1985, the court entered an order requiring the defendant to produce the documents within seven days; these documents were still not forthcoming from the defendant; on November 7, 1985, the court again told defendant that he was to produce the documents, and defendant's counsel advised this court that it would do so within a couple of days; on November 18, 1985, plaintiffs' counsel advised the court that documents still had not been produced, and he sent a letter to defendant's attorney; that the sum of these actions demonstrates that the defendant has violated the court's orders, has broken oral promises made to the court, and has delayed these proceedings. Plaintiffs therefore requested the trial court to strike the pleadings of the defendant, hold him in default, and enter judgment accordingly.

On December 4, 1985, the trial court held a hearing on the status of the discovery of this case. Plaintiffs stated that as of that date, the defendant had still not produced all of the requisite documents. Defendant's counsel stated that his client was in good-faith compliance with the spirit of discovery, and he complained that most of the documents which plaintiffs wanted had already been shown. He reassured the court he would make anything else available if needed. The trial court ruled that the defendant had violated its discovery orders and that discovery was still incomplete. Therefore, it struck the defendant's pleadings and the counterclaim and entered a default judgment for the plaintiff.

On December 17, 1985, the trial court heard defendant's motion to vacate the default judgment. During this hearing, defendant related that another search for documents produced some documents which had never been delivered before. The court remained unconvinced that all of the documents had been produced. It denied part of the motion as to the judgment in favor of plaintiffs, but granted part of the motion by reinstating the third-party claim against Wojnowski. The court also denied defendant's motion to disqualify Walker from representing the plaintiffs. The court based its decision in part on its determination that the motion to disqualify was

brought in bad faith by defendant simply to stall the litigation.

On appeal, defendant contends that the trial court abused its discretion in that (1) it imposed the unwarranted sanction of a default judgment, and (2) it did not disqualify Walker from representing the plaintiffs and Wojnowski in the trial court and the plaintiffs in this appeal.

■■ ■ Defendant sets forth two arguments to support his first contention. He first focuses on the documents which were produced by him and concludes that he fully complied with plaintiffs' notice to produce documents. He relates a litany of the various occasions during which he either allowed Walker to review or copy documents and where he sent documents to Walker. Alternatively, he argues that the discovery sanction of default judgment was imposed prematurely. He casts the sanction in the light of a punishment rather than a means of accomplishing complete discovery. (See *Jaffe v. Fogelson* (1985), 137 Ill. App. 3d 961.) Defendant argues that the entry of a default judgment for failure to comply with discovery should be imposed only as a last resort. (See *Singer v. Treat* (1986), 145 Ill. App. 3d 585, 592; *Cedric Spring & Associates, Inc. v. N.E.I. Corp.* (1980), 81 Ill. App. 3d 1031, 1034-35.) Finally, he maintains that the standard for determining whether a party has acted unreasonably is whether the conduct of the offending party is characterized by deliberate and pronounced disregard for the rule or order not complied with (*Serpe v. Yellow Cab Co.* (1973), 10 Ill. App. 3d 1, 5), and he argues that the instant case does not involve actions which were wilful, contumacious, or in disregard of the court's authority. Even assuming, *arguendo*, that he did not send plaintiffs copies of documents on a timely basis, defendant argues that the sanction imposed by the trial court was too severe. (See *Jaffe v. Fogelson* (1985), 137 Ill. App. 3d 961, 964-65 (courts should normally impose a less severe sanction than summary judgment for failure to comply with discovery).) Therefore, defendant concludes the trial court's default judgment against defendant should be reversed.

We disagree with both of defendant's alternate theories. Under supreme court rules, the trial court has broad powers to supervise the discovery process. Supreme Court Rule 219(c) provides:

"If a party *** unreasonably refuses to comply with any provision of part E of article II of the rules of this court *** or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:

* * *

(v) that, as to claims or defenses asserted in any pleading to which that issue is material, a judgment by default be entered against the offending party or that his action be dismissed with or without prejudice; or

(vi) that any portion of his pleadings relating to that issue be stricken and, if thereby made appropriate, judgment be entered as to that issue." (103 Ill. 2d R. 219(c).)

The imposition of sanctions for noncompliance with discovery rules and orders rests largely with the discretion of the trial court and will not be disturbed on review absent a clear abuse of that discretion. (*Gallo v. Henke* (1982), 107 Ill. App. 3d 21, 26-27; *Cedric Spring & Associates, Inc. v. N.E.I. Corp.* (1980), 81 Ill. App. 3d 1031, 1034.) A sanction causing a default judgment is the most severe sanction a court can impose on a defendant, and such sanction is only proper in those cases where actions of a party showed deliberate, contumacious, or unwarranted disregard of a court's authority. (*Barnes v. Black & Decker Manufacturing Co.* (1984), 135 Ill. App. 3d 700, 706; *Perimeter Exhibits, Ltd. v. Glenbard Molded Binder, Inc.* (1984), 122 Ill. App. 3d 504, 514; *Gallo v. Henke* (1982), 107 Ill. App. 3d 21, 27.) As was stated in *Perimeter Exhibits, Ltd.*, "While it is true that the trial court is to seek a means to have discovery accomplished rather than merely to inflict punishment [citations], it is also appropriate to consider the need for using discovery sanctions as a general deterrent which will provide a strong incentive for *all* litigants to fully and accurately comply with discovery rules [citation]." (Emphasis in original.) *Perimeter Exhibits, Ltd. v. Glenbard Molded Binder, Inc.* (1984), 122 Ill. App. 3d 504, 514.

Clearly, defendant's contention that he has fully cooperated and abided by the discovery rules and court orders by producing all of the required documents is belied by the record. Defendant's conduct throughout the scope of this pretrial litigation was uncooperative, dilatory, and unreasonable. The record reflects that plaintiffs' counsel attempted on several occasions to avail himself to defendant's convenience by traveling to defendant's offices to examine the original documents which were in defendant's possession. On each occasion his efforts at obtaining all relevant documents were thwarted.

Concerning the sanction itself, the trial court demonstrated utmost patience with the defendant's conduct in this case. Defendant had ample opportunity to avoid the sanction of which he complains. He had received notice to produce documents in May 1985. After at least two visits by plaintiffs' counsel, he had still not produced the

requested documents. Even after his assurances to produce the documents, by the end of August, he had still not produced them. While defendant claimed to have a good-faith reason to withhold documents from plaintiffs' counsel, the trial court heard the claim and entered its order on October 31, 1985, for defendant to complete discovery within seven days. The trial court made it clear to defendant that it was displeased with defendant's prior failure to furnish the documents as it had already ordered.

On November 7, 1985, the court again expressed its concern that the defendant was attempting to stall the litigation by refusing to cooperate in the discovery proceedings. On November 27, 1985, the court heard the plaintiffs' request for the sanction of default judgment due to defendant's flagrant violation of the court's orders. The court ordered defendant to produce all documents by 5 p.m. December 2, 1985, and warned, "If said documents are not produced as required in paragraph 1 above then all of Defendant House's pleadings shall be stricken, held for naught, and judgment entered accordingly." On December 4, 1985, at 9 a.m., plaintiffs' counsel related that, even at that point in time, the defendant had still not yet produced several items, among which was his 1984 tax return. The trial court, therefore, struck the defendant's pleadings and entered a default judgment for the plaintiffs.

On December 17, 1985, defendant presented his motion to reconsider the judgment order. His attorney produced further documents, stating that some of them were records of Wojnowski and two of them had been obtained from defendant on December 16. This serves only to underscore the incompleteness of defendant's compliance prior to the court's default judgment. The court denied defendant's motion in a lengthy order which related its findings in this case. The court noted "that Defendant House has failed to furnish a personal affidavit or to establish that production is finally completed; that in any event production and resolution of this case has been repeatedly delayed."

■ The trial court's discretion in this matter should be afforded considerable deference, since the court is in the best position to determine whether a party's conduct amounts to deliberate or contumacious flouting of judicial authority. (*Fine Arts Distributors v. Hilton Hotel Corp.* (1980), 89 Ill. App. 3d 881, 883.) In the instant case, defendant's dilatory tactics demonstrate a deliberate and pronounced disregard for the court's authority. The trial court did not abuse its discretion by ordering defendant's pleadings stricken and by entering a default judgment for plaintiff.

██ Defendant would have us vacate the default judgment due to plaintiffs' failure to follow Supreme Court Rule 201(k) (87 Ill. 2d R. 201(k)), according to which "[E]very motion with respect to discovery shall incorporate a statement that after personal consultation and reasonable attempts to resolve differences the parties have been unable to reach an accord." We feel that the record clearly reflects that the plaintiffs' and defendant's counsel had extensive consultation both privately and before the court, and it was clear that they were unable to reach an accord. The instant case is similar to *John Mathes & Associates, Inc. v. Noel* (1981), 94 Ill. App. 3d 588, where the trial court noted that the circumstances wherein the plaintiff consulted personally with the defense attorney and made reasonable attempts to resolve all differences regarding discovery constituted substantial compliance with Supreme Court Rule 201(k). See *Singer v. Treat* (1986), 145 Ill. App. 3d 585, 592; see also *Simmons v. Shimek* (1985), 139 Ill. App. 3d 927, 929 (compliance with Rule 201(k) may be demonstrated by the record); *Sanchez v. Phillips* (1977), 46 Ill. App. 3d 430, 433 (plaintiffs' failure to technically follow Rule 201(k) is harmless where facts demonstrate efforts by the party to repeatedly reach an accord concerning discovery problems).

██ Defendant's second contention is that the trial court erred in not disqualifying Walker from acting as plaintiffs' and Wojnowski's counsel. Defendant's theory is that by representing both plaintiffs and Wojnowski, Walker knew the litigation strategy and other confidential information of parties who were both adverse to each other and adverse to defendant. The acquisition of such knowledge could have been used unfairly against defendant. Therefore, Walker's representation of both parties would be in violation of Supreme Court Rule 5—105(b):

> "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under Rule 5—105(c)." 87 Ill. 2d R. 5—105(b).

Defendant cites *Scheffki v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1971), 1 Ill. App. 3d 557, 562, for the proposition that a lawyer cannot represent conflicting interests or undertake to discharge inconsistent duties, no matter how honest his motives or intentions.

It is well established that the attorney representing the concerned parties is in the best position to determine whether a conflict of interests exists. (See *People v. Hope* (1981), 96 Ill. App. 3d 180,

184, citing *Holloway v. Arkansas* (1978), 435 U.S. 475, 485, 55 L. Ed. 2d 426, 435, 98 S. Ct. 1173, 1179.) While representing a plaintiff and a third-party defendant in a pretrial posture such as this is certainly not an ideal arrangement, we do not believe that Walker's exercise of his independent professional judgment on behalf of the parties necessarily affected his representation. (See 87 Ill. 2d R. 5—105(b).) The Lavajas were completely informed of the situation and they gave their full consent. "In the situations covered by Rules 5—105(a) and (b), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." (87 Ill. 2d R. 5—105(c).) We feel that Walker satisfied his duty under this rule. Given the unique facts in this situation, Walker need not have been disqualified from representing the parties. See *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 198; *Rogers v. Robson, Masters, Ryan, Brumund & Belom* (1979), 74 Ill. App. 3d 467, 473, *aff'd* (1980), 81 Ill. 2d 201.

The trial court had reserved its ruling on disqualifying Walker because it suspected that the defendant was utilizing the disqualification as a stalling tactic. When the court realized its suspicions were valid, it properly issued sanctions and withdrew its pending disqualification of Walker. Even assuming, *arguendo*, that a conflict did exist between the interests of plaintiffs and third-party defendant, defendant House would have had no standing to challenge Walker's ability to represent both of the parties without showing that this representation adversely affected his interest. (See *Evink v. Pekin Insurance Co.* (1984), 122 Ill. App. 3d 246, 250.) A review of the record does not find that such a showing was adequately made.

For the foregoing reasons, the decision of the trial court is affirmed in all respects.

Affirmed.

REINHARD, J., concurs.

JUSTICE NASH, dissenting:

I respectfully dissent, having concluded that imposition of the ultimate sanction of entry of a default judgment for failure to fully comply with a discovery order was an abuse of discretion.

The production of a large number of varied business and per-

sonal records was requested, and it appears that defendant's counsel did work with plaintiffs' attorney and furnished most of the material and responded to interrogatories. When defendant sought to disqualify plaintiffs' attorney for a perceived conflict of interest, plaintiffs' counsel complained that defendant's attorney was delaying discovery and had refused to turn over certain documents as he was going to seek the disqualification of plaintiffs' attorney. The trial court ordered production within seven days and also indicated it would partially disqualify plaintiffs' attorney and gave plaintiffs 21 days to substitute attorneys. Before expiration of the 21-day period, plaintiffs again petitioned to compel defendant to produce further documents. At a hearing held several days later, the court found that discovery was still incomplete and struck defendant's answer and counterclaim and entered a default judgment for plaintiffs. Two weeks later the court ruled on defendant's motion to disqualify plaintiffs' counsel and denied it.

In my view certain lesser sanctions were clearly warranted in this case, but not that which was imposed. The entry of a default judgment for failure to comply with discovery is to be used only as a last resort (*Stevens v. International Farm Systems, Inc.* (1978), 56 Ill. App. 3d 717), and is only proper where the actions of a party show a deliberate, contumacious, or unwarranted disregard for the court's authority. (*Peoples Gas, Light & Coke Co. v. Chicago Black Improvement Association* (1986), 148 Ill. App. 3d 1093, 1096.) Supreme Court Rule 219(d) (87 Ill. 2d R. 219(d)) provides for the discretionary application of just sanctions for discovery violations with a view to require the completion of discovery and a trial on the merits; the goal of such sanctions is to complete discovery rather than punish. *Jaffe v. Fogelson* (1985), 137 Ill. App. 961, 964.

There are cases in which the final sanction imposed here would be proper, but this isn't one of them.